UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| L. CORE, a minor by and through his next friend, SHERON CORE, | ) ) ) |
| Plaintiffs, | ) ) Case No. 23-cv-05462 |
| v. | ) ) Judge Sharon Johnson Coleman |
| CHICAGO BOARD OF EDUCATION, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sheron Core, on behalf of her minor grandson Plaintiff L. Core (together, "Plaintiffs"), brings a three-count First Amended Complaint against the Board of Education of the City of Chicago[1] (the "Board of Education") and various Board of Education school administrators, including Douglas Stalnos, Daniel Kuzma, Jennifer White, Keiona Elliott, and Marcellus Summers (together, the "Individual Administrator Defendants"; with the Board of Education, "Defendants"). Plaintiffs allege that Defendants violated: (1) the McKinney-Vento Act, 42 U.S.C. §§ 11301 *et seq.*; (2) the Rehabilitation Act, 29 U.S.C. § 794; and (3) the Equal Protection Clause of the Fourteenth Amendment. Before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part Defendants' motion [14].

**BACKGROUND**

The following facts are accepted as true for the purposes of resolving Defendants' motion. L. Core is a minor disabled student in the Chicago Public School District. Due to difficult family

---

[1] The Board of Education was incorrectly identified as the "Chicago Board of Education" in the complaint.

1

circumstances, L. Core is currently in the care of his grandmother, Sheron Core. Plaintiffs are homeless, lacking a fixed and adequate nighttime residence.

The Board of Education is the governing body responsible for Chicago Public Schools ("CPS"), including School District 299. Two schools in District 299 are at issue here, Henry R. Clissold Elementary School ("HCES") and Morgan Park High School ("MPHS"). L. Core is a District 299 student currently enrolled at MPHS.

The Individual Administrator Defendants each work in an administrative role at one of those two schools or for the Board of Education generally. Stalnos is an assistant principal and Students in Temporary Living Situations ("STLS") liaison at HCES. Kuzma is the principal at MPHS. White is the assistant principal at MPHS. Elliott is an office clerk and STLS liaison at MPHS. Summers is the senior program coordinator for CPS's STLS Liaison Program.

On August 27, 2021, Sheron Core attempted to register L. Core at HCES. At the time, L. Core was homeless and had been studying at a different CPS school under an Individualized Education Program ("IEP") tailored to his specific learning needs. HCES told Sheron Core that L. Core would not be enrolled at HCES until it received the necessary records, but that HCES would not request those records for her. Stalnos, as STLS liaison at HCES, stepped in to attempt to assist Sheron Core. Sheron Core told Stalnos that L. Core was an unaccompanied homeless youth, but Stalnos still denied L. Core's registration at that time, telling Sheron Core that she needed to follow certain school rules such as providing proof of guardianship and proof of address in the boundaries of the school district.

On September 1, 2021, HCES received L. Core's transfer paperwork, including his IEP, from his prior school. The IEP included that L. Core should receive transportation and once-per-week counseling sessions. Around this same time, CPS reevaluated L. Core's IEP and eliminated his transportation and counseling services. Plaintiffs received the revised IEP in early September 2021.

2

Sheron Core contacted STLS Liaison Summers around September 7, 2021, to resolve the denial of L. Core's registration at HCES. Plaintiffs claim Summers failed to inform Sheron Core about the process required to resolve a denial of registration for enrollment and failed to provide her with additional information required by relevant education laws. Moreover, Summers told Sheron Core that L. Core did not qualify for transportation services. She allegedly neglected to inform Sheron Core that Stalnos failed to fill out an STLS "Service Initiation Form," which would have made L. Core eligible for transportation.

The next day, however, Sheron Core received a phone call from HCES principal Jamonica Marion seeking to resolve L. Core's enrollment issues. This conversation resulted in L. Core starting school on September 9, 2021, eleven days after his initial request and after the first day of school at HCES.

That school year was a difficult one for L. Core. He dealt with homelessness, family troubles, and the COVID-19 pandemic. On February 15, 2022, he expressed suicidal ideations to his health teacher. HCES called the Crisis Team from Riveredge Hospital and provided L. Core with crisis care the same day. The Crisis Team ultimately ordered intensive outpatient programing for L. Core from March through May 2022. During his outpatient care, L. Core missed many days of school. HCES allegedly failed to inform Plaintiffs about options to mitigate these absences. Although CPS maintains a Comprehensive Mental Health and Suicide Prevention Policy, Plaintiffs allege that Defendants "did absolutely nothing to support" L. Core through his lengthy crisis care.

Despite his challenges, L. Core graduated from HCES. Around July 26, 2022, Sheron Core emailed MPHS Principal Kuzma to begin the registration process for L. Core to attend high school. She hoped to register L. Core the next day. Kuzma was unable to assist Sheron Core, so Sheron Core emailed STLS Liaison Elliott on July 27, 2022, with the same request. Receiving no response, Sheron Core went in person to MPHS on July 28, 2022, bringing with her a notarized letter from

3

L. Core's father granting Sheron Core temporary custody of her grandson. Elliott would not accept the letter and insisted that Sheron Core bring L. Core in person to register him. But when both Plaintiffs returned in person, they were denied registration for reasons they do not explain.

After speaking to numerous administrators, Sheron Core emailed Kuzma multiple times on or about August 16, 2022, attaching paperwork related to L. Core's custody and homeless status. Kuzma responded by phone that evening but had not reviewed the email attachments. The following day, Kuzma followed up with this message: "I connected with the team today. L. Core was not denied STLS status. The issue presented is that you are not the legal guardian to enroll. Once L. Core's father comes in, we can enroll and build a schedule through the STLS program." L. Core's father is also homeless and disabled, which made it difficult for him to attend registration.

Sheron Core continued to work with administrators over the next few weeks and continued to face the same roadblocks. Plaintiffs allege that this behavior is contrary to the "CPS Public Schools Policy Manual on Education of Homeless Children and Youth," though Plaintiffs do not challenge that policy on its face. Finally, on September 12, 2022, Elliott finalized L. Core's enrollment. L. Core started school at MPHS twenty-one days after the first day of classes.

L. Core was not assigned a locker on his first day and was not assigned a personal Chromebook for seven days. And even with his IEP, L. Core struggled to keep up with his schoolwork. L. Core had his IEP reevaluated by a Special Education Case Manager around October 29, 2022. L. Core experienced other problems with school administration during this time. He received letters about unexcused absences that he disputed and experienced a delay in receiving his Student Ventra Cards for public transportation. L. Core is still an MPHS student.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir.

4

2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

1. *The Individual Administrator Defendants*

Suits against individual public officials in their "official capacities" are treated as claims against the government entities for which they are agents. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001); *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 974 n.1 (7th Cir. 2000). Under this principle, Defendants argue that the Individual Administrator Defendants should be dismissed because Plaintiffs' claims against them are brought only for conduct done in their official capacities. Plaintiffs concede this point. *See* Dkt. 20 at 12 ("Defendants were named in their official capacities."); *id.* at 13 ("Plaintiffs in the case before this Honorable Court have not sued the individuals in their personal capacity."). Still, Plaintiffs argue that the Individual Administrator Defendants should remain in the case "to show that their individual actions within their official capacity holds the municipality or Board liable for their actions." *Id.* at 12. Plaintiffs cite no authority for this assertion, nor do they explain how it differs from Defendants' position.

Plaintiffs misunderstand Defendants' point. The issue is not whether the Individual Administrator Defendants' actions are relevant to this case, but whether they should be named defendants. Plaintiffs will be able to litigate the Individual Administrator Defendants' actions so

5

long as the Board of Education remains a defendant *based on those actions*. But maintaining the Individual Administrator Defendants as named defendants in this case is redundant and unnecessary since the Board of Education is already a defendant. Courts in this district commonly dismiss officials for this reason. *See, e.g.*, *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed [the school administrator] defendants in their official capacity because the [plaintiffs] also sued the [school] District."); *Allen v. Bd. of Trustees Rock Valley Coll.*, No. 19-CV-05465, 2021 WL 4034067, at *7 (N.D. Ill. Sept. 3, 2021) (Kness, J.) (dismissing officials for the same reason); *Sacks v. Niles Twp. High Sch., Dist. 219*, No. 12 C 4553, 2013 WL 3989297, at *3 (N.D. Ill. Aug. 2, 2013) (Lefkow, J.) (same); *Jones v. Reg'l Transp. Auth.*, No. 11 C 04924, 2012 WL 2905797, at *6 (N.D. Ill. July 16, 2012) (Chang, J.) (same). Therefore, Plaintiffs' claims against the Individual Administrator Defendants are dismissed.

2. *Count I – The McKinney-Vento Act &* Monell *Liability*

The McKinney-Vento Act, 42 U.S.C. §§ 11301 *et seq.*, enacted the congressional goal relevant here that "each State educational agency … assure that each child of a homeless individual and each homeless youth have access to a free, appropriate public education … [and that] homelessness alone … not be sufficient reason to separate students from the mainstream school environment." *Id.* § 11431. Although the McKinney-Vento Act does not itself provide a private right of action, the parties agree that Plaintiffs may enforce their rights under the McKinney-Vento Act through 42 U.S.C. § 1983. *See Lampkin v. D.C.*, 27 F.3d 605, 612 (D.C. Cir. 1994) (concluding "that section 11432(e)(3) of the McKinney-Vento Act confers enforceable rights on its beneficiaries and that [plaintiffs] may invoke section 1983 to enforce those rights"); *Nat'l L. Ctr. on Homelessness & Poverty, R.I. v. New York*, 224 F.R.D. 314, 321 (E.D.N.Y. 2004) ("Plaintiffs can maintain an action under section 1983 to enforce provisions of the McKinney Act."). The Board of Education argues,

6

however, that Plaintiffs fail to state a § 1983 claim against it under the *Monell* doctrine, and that their McKinney-Vento Act claims must therefore be dismissed.

A municipality can be held liable for violating federal law under the *Monell* doctrine. *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). To succeed on a *Monell* claim, a plaintiff must show: "(1) he suffered a deprivation of a constitutional [or federal law] right; (2) as a result of an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority, that was; (3) the cause of his constitutional [or federal law] injury." *See Carmona v. City of Chicago*, No. 15-CV-00462, 2018 WL 1468995, at *2 (N.D. Ill. Mar. 26, 2018) (St. Eve, J.) (citing *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017)). Plaintiffs' theory of liability is based on a "widespread custom." *See* Dkt. 20 at 7 (Defendants' "pattern of behavior is indicative of a custom adopted by Defendants that caused injury to Plaintiffs").

There are no "bright-line rules defining a 'widespread custom'" in *Monell* cases. *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010). But a plaintiff must demonstrate that the custom is more than a "random event." *Id.* To distinguish a widespread custom from a random event, a plaintiff may show "an implicit policy or a gap in expressed policies" or "a series of violations to lay the premise of deliberate indifference." *Id.* at 303 (citations omitted).

The Board of Education argues that Plaintiffs fail to point to any acts—let alone a series of violations—that could support a *Monell* claim against it, and that Plaintiffs have not alleged that any custom was the "moving force" behind Plaintiffs' McKinney-Vento Act claims. Plaintiffs respond by highlighting their various allegations that Board of Education administrators delayed L. Core's enrollment in violation of § 11432(g)(3)(E)(i). Plaintiffs also point to the Board of Education's conduct after L. Core was enrolled, such as its "refus[ing] to provide transportation, refus[ing] to provide accommodations, [and] refus[ing] to provide information on the dispute process, all in violation of the [McKinney-Vento] Act." (Dkt. 20 at 10.)

The remainder of Plaintiffs' argument is nearly impossible to follow. It addresses "blanket immunity"—an issue not raised by Defendants—and copy-and-pastes large case excerpts from Westlaw or Lexis without context. It addresses "reliance claims"—again, not an issue raised by Defendants—and quotes an irrelevant Justice Frankfurter dissent from 1961. And it opines on the constitutionality of § 1983 and *stare decisis*—once again, issues not raised by Defendants—and appeals to uncited "prior litigation against CPS."[2] Yet Plaintiffs largely fail to address Defendants' charge that they have inadequately pled facts supporting a *Monell* claim.

Despite Plaintiffs' briefing, the Court is mindful of the procedural posture of this case. That is why the Court is not persuaded by Defendants' reliance on *K.J. v. Henry County School District*, 18 C 4251-LMM, 2019 WL 13268209 (N.D. Ga. Jan. 9, 2019), which addressed the plaintiffs' motion for summary judgment and held that the plaintiffs could not "meet their burden at [summary judgment] to show that the [school district's McKinney-Vento] written policy itself was the moving force behind the established McKinney-Vento Act violations." *Id.* at *10. In contrast here, Plaintiffs "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists." *Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (Dow, J.); *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("At the pleading stage" of a widespread custom case, a plaintiff need only "allege facts that permit the reasonable inference" that the practice amounts to a custom).

Plaintiffs' allegations amount to more than a few "random events." To determine whether a complaint is well-pled, courts in this district focus on "specific instances of misconduct alleged," "circumstances surrounding" that allegedly unlawful conduct, and "additional facts probative of a widespread custom." *Carmona*, 2018 WL 1468995, at *2 (collecting cases). Plaintiffs allege that

---

[2] Although there are several more examples of irrelevant arguments and unnecessary information, the Court limits its comments to those stated here.

multiple school administrators in multiple schools denied and delayed L. Core's enrollment, failed to provide adequate transportation, failed to adequately inform Sheron Core about educational opportunities available to L. Core, and failed to provide adequate transportation and other necessary services, all in violation of various provisions of the McKinney-Vento Act.  Plaintiffs also allege that these delays and denials of services and information injured L. Core educationally, financially, and emotionally.  That is enough at this point for Plaintiffs to proceed to discovery on their *Monell* claims against the Board of Education.

The Court denies the Board of Education's motion is denied as to Count I.

3. *Count II – Rehabilitation Act*

Plaintiffs next allege that Defendants violated the Rehabilitation Act, 29 U.S.C. § 794, by failing to reasonably accommodate L. Core's disabilities, which include "ADHD, ODD, and propensity for depression and anxiety." (Dkt. 13 at ¶ 79.)  A plaintiff can establish disability discrimination under the Rehabilitation Act by showing: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (quoting *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)).  Plaintiffs' claim is based on the second theory—that Defendants failed to provide a "reasonable modification" for L. Core's disabilities.

Defendants initially argue that Plaintiffs fail to state a Rehabilitation Act claim because they do not allege *how* any party failed to accommodate L. Core.  Regardless of L. Core's needs or the schools' ability to accommodate them, Defendants argue, "there are no allegations in the FAC regarding when Plaintiffs requested and were denied such accommodations by the Board or any of its employees." (Dkt. 14 at 7.)  Plaintiffs respond that L. Core was denied reasonable

9

accommodations through his IEP, which originally included "once-a-week counseling sessions" that were later "eliminated in a re-write of Plaintiff L. Core's IEP." (Dkt. 13 at ¶ 20.)

Plaintiffs expand on their IEP allegations in an affidavit submitted in support of their response brief. (*See* Dkt. 20-1.) It is true that Plaintiffs may "elaborate" on allegations through consistent "extra assertions" in a response brief. *Knox v. Curtis*, 771 F. App'x 656, 658 n.2 (7th Cir. 2019) (citing *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)). But in that case, it is also fair for Defendants to respond to these newly developed arguments in reply.

Defendants do so by arguing that Plaintiffs failed to exhaust their administrative remedies. To contextualize this argument, the Court briefly describes the relationship between statutes relevant to students with disabilities. "The Individuals with Disabilities Education Act (IDEA or Act), 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.*, ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 157, 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017). The Rehabilitation Act, 29 U.S.C. § 794, under which Plaintiffs bring their claim, provides related protections for children with disabilities. *Id.* at 159. It demands "certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities." *Id.* (citations omitted). After the Supreme Court addressed the interactions between these two statutes in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), Congress responded by adding a "carefully defined exhaustion requirement" to IDEA, *Fry*, 580 U.S. at 161, which reads in relevant part:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

The Supreme Court clarified the application of § 1415(l) in *Fry*, 580 U.S. at 165. For the IDEA's statutory exhaustion requirement to apply, "a suit must seek relief for the denial of a [free appropriate public education, or "FAPE"], because that is the only 'relief' the IDEA makes 'available." *Id.* And to determine whether a suit seeks relief for a FAPE denial, courts look to the gravamen of the complaint. *Id.* For example, courts might ask, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" *Id.* at 171.

That question is helpful in considering Plaintiffs' claim, which challenges the substance of L. Core's IEP. IEPs are the "'primary vehicle' for providing each child with the promised FAPE" under IDEA. *Id.* at 158. IDEA itself creates the IEP requirement and applies it to "local districts." *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 485 (7th Cir. 2012); *see also* 20 U.S.C. § 1414(d) (creating IEP requirements). A plaintiff challenging the substance of an IEP could obviously not bring that claim against another public facility that was not a school that created the IEP. These kinds of challenges to IEPs therefore "seek relief" available under IDEA, and so require a plaintiff to exhaust his or her administrative remedies. *See Nelson v. Charles City Cmty. Sch. Dist.*, 900 F.3d 587, 593 (8th Cir. 2018) (holding that a student's Rehabilitation Act complaint sought relief available under IDEA because the denial of the student's request for online classes was directly related to denial of a FAPE); *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) (holding that "the gravamen of the [plaintiffs'] § 504 and ADA claims was that the School District deprived [the student] of a FAPE … [where] their § 504 and ADA claims focused precisely on the adequacy of the educational program the School District afforded [the student]").

Because Plaintiffs challenge the substance of L. Core's IEP, Plaintiffs were required to exhaust their administrative remedies before bringing this lawsuit. The Court cannot tell from

11

Plaintiffs' allegations whether they did so, as none relate to administrative remedies. Count II is therefore dismissed without prejudice. Plaintiffs will have an opportunity to amend.

   4. *Moot Claims*

Defendants argue that Plaintiffs' requests for equitable relief under Counts I and II are moot and should therefore be dismissed. Because the Court dismisses Count II for failure to state a claim, it will only address Count I here.

Defendants argue in their opening brief that Plaintiffs' claims are moot because (1) L. Core successfully enrolled in both HCES and MPHS and (2) the complaint "does not allege any violations of any federal law for the current academic year." (Dkt. 14 at 3.) Defendants also suggest that the McKinney-Vento Act only provides for equitable relief, though they do not cite to any provision of the Act or explain how that is so. Instead, Defendants note only that they "could not find a single case in which money damages of any kind were awarded for a violation of the [McKinney-Vento Act]." (Dkt. 14 at 4.) Be that as it may, the Court will not make such a significant ruling on such an underdeveloped argument. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (citation omitted).

Plaintiffs respond with multiple further confusing arguments, asserting that "Defendants bear a 'heavy burden' to establish mootness at the appellate stage," Dkt. 20 at 4; that "Defendants fail to show how this will cause a conflict of interest," *id.* at 5; and that moot claims would not "necessarily bar members of the class from obtaining relief," *id.*, even though Plaintiffs do not bring a class action. Buried in this section, however, is a note that the Board of Education's misconduct is ongoing because L. Core continues to attend MPHS and continues to need access to programs for homeless youth that he is not being provided—transportation, counseling, and other educational opportunities.

12

In reply, Defendants abandon their original argument. They say that "[r]egardless [of Plaintiffs' suggestion that the violations will continue into the future], Plaintiffs' prayer for injunctive relief … still fails because they cannot establish a likelihood of success on the merits given that they have failed to state a claim upon which relief can be granted." (Dkt. 21 at 2.) To make this new point, Defendants rely on two cases addressing motions for preliminary injunctions. *See Curtis v. Thompson*, 840 F.2d 1291, 1293 (7th Cir. 1988) ("Plaintiff Brenda Curtis appeals the district court's denial of her motion for a preliminary injunction."); *Williams v. Wills*, No. 22-CV-1364-DWD, 2022 WL 3370921, at *1 (S.D. Ill. July 1, 2022) (addressing a plaintiff's "Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction"). Defendants fail to explain, and the Court cannot surmise, how the standard for a preliminary injunction is relevant here.

It is unclear from this disorganized exchange whether there is even a live dispute. But because Defendants apparently concede Plaintiffs' point, and because the Court agrees that Plaintiffs have alleged some ongoing violations, the Court rejects Defendants' mootness argument.

5. *Count III – Equal Protection Clause of the Fourteenth Amendment*

In Count III, Plaintiffs allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating L. Core differently than students not experiencing homelessness. "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Defendants argue that Plaintiffs' claim fails because they do not allege that L. Core "was treated differently based on his membership in any protected class recognized at law." (Dkt. 14 at 7.) Plaintiffs respond, again missing the point, that "[i]t stands to reason that the legislators [behind the McKinney-Vento Act] intended to ensure that homeless

13

youth would be treated the same as children with fixed addresses." (Dkt. 20 at 14.) The Court will construe Plaintiffs' argument as proposing that homeless persons are a protected class.[3]

Plaintiffs provide absolutely no authority to support this proposition, and the Court could find none through its own research. But Plaintiffs are incorrect to suggest that classes of people targeted by acts of Congress for relief are also necessarily members of a "protected class" for the purposes of the Fourteenth Amendment. Rather, classifications are constitutionally suspect if they are directed to "discrete and insular minorities." *United States v. Carolene Prods.*, 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). "A suspect class either 'possesses an immutable characteristic determined solely by the accident of birth,' or is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (quoting *Frontiero v.*

---

[3] Plaintiffs fail to explicitly address Defendants' position at all in their response. For that reason, Defendants ask the Court to find that Plaintiffs waived any argument in opposition. That is not an unreasonable request. As in Plaintiffs' briefing on Count I, Plaintiffs largely miss the import of Defendants' arguments. Instead, Plaintiffs raise irrelevant issues through incoherent case excerpts with incomplete or non-existent citations—e.g., that "Defendants receive federal funding, and because of that are subject to the provisions of laws enforced by the Constitution," Dkt. 20 at 14; that "[t]he Court has long refused to read § 1983's unmodified term 'laws' to mean only some laws," *id.* at 15; and that the Court should apply a test for "unambiguous conferral" of rights under § 1983 to determine whether Plaintiffs' Fourteenth Amendment claim may proceed. *Id.* Defendants describe Plaintiffs' response brief as "fail[ing] to cogently address the arguments raised in Defendants' motion and otherwise difficult to follow." (Dkt. 21 at 1.) The Court would normally dismiss such a statement as unnecessary and counter to the civility the Court requires of litigants before it. But in this case, it is well taken.

For another example, Plaintiffs describe Defendants' mootness arguments as "abhorrent at best" and "the kind of thinking that will allow this type of discrimination and denial of rights to continue," Dkt. 20 at 3, but then inexplicably address "mootness at the appellate stage" and argue when "a case is moot on appeal." *Id.* at 4. Plaintiffs may find Defendants' arguments distasteful, but they must still engage with the merits, and should certainly understand the procedural posture of their case. As explained in its Conclusion, the Court is dismissing most of Plaintiffs' claims without prejudice. If another motion to dismiss is briefed in this case, the Court urges Plaintiffs' counsel to read this Opinion and Defendants' arguments carefully. Despite the shortcomings identified in this Opinion, the subject of this litigation (L. Core's education) deserves the closest attention and counsel's best efforts. Plaintiffs' counsel's briefs should reflect that. This time around, counsel's brief was woefully substandard.

*Richardson*, 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), and *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)).

There may be colorable arguments that homeless persons (particularly homeless youth) fall within one of the latter categories, but Plaintiffs have made none of them. Nor have Plaintiffs provided any allegations to support such an argument. As noted, the Court was unable to find any case law in this Circuit holding that the homeless are a protected class under the Constitution. Indeed, a federal court in California found that "no court has ever held the homeless to be a suspect class." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1108 (E.D. Cal. 2012). And although the Seventh and Ninth Circuits have apparently "not directly addressed the issue, both the Eleventh and Third Circuits have refused to define homeless persons as a suspect class." *Id.* (citing *Joel v. City of Orlando*, 232 F.3d 1353, 1357 (11th Cir. 2000); *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1269 n. 36 (3d Cir. 1992)). Without further argument, the Court will not depart from those holdings.

Because Plaintiffs fail to allege that L. Core is a member of a protected class under the Fourteenth Amendment, the Court dismisses Count III.

**CONCLUSION**

For these reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss [14]. Count I may proceed against the Board of Education only. The rest of Plaintiffs' claims are dismissed without prejudice. Because this is the first opinion addressing the merits of Plaintiffs' claims, they are granted leave to amend their complaint within 30 days if they believe in good faith that they can cure the deficiencies identified here.

**IT IS SO ORDERED.**

Date: 8/30/2024

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge

15